Richardson, J.
dissenting. The facts of this rule upon the sheriff, are all plain. In April ’45, judgment against sheriff Edward Mulligan and his sureties was duly entered up at the suit of Wm. Youmans, of course in the penalty of 20,-000 dollars. The damages amounting to $608 70. and the money duly paid. In April ’46, other damages, in $816 37, were assessed for the same Wm. Youmans, in a different cause of action. This second assessment was made under the brief form of proceeding ordered by the court in the case of tho Treasurers v. Bates, in 1831, as a substitute for the regular suit, formerly brought by every one complaining of the defalcations of a sheriff.
But before this second assessment of damages for Wm. Youmans, to wit: in Nov. ’45, R. G. Norton recovered a judgment against the same Edward Mulligan, individually, for $ . Norton’s execution was filed in Nov. ’45.
The question, therefore, is this: Does the second assessment for Wm. Youmans, in April, ’46, come in and take priority of the judgment of Norton, of November, ’45? In a word, can the third lien of Youmans supersede the second lien of Norton, and so come in as if identical with Youmans’ first lien, of April, ’45, and thus reach over Norton’s lien, which stands prior to it by six months?
Such encroaching is either justified by the decision and for-inula ordered to be adopted in Batesr case, or, it is utterly *361 illegal. For, at law, successive judgments bind the defendant’s property according to priority of time in their rendition. (
For instance, before Bates's case, every one complaining of the defalcations of a sheriff, had to sue him and his sureties upon the official bond ; and the first judgment or assessment had, exclusively and for itself alone, the first lien ; and subsequent judgments their liens in the order of priority.
How, I ask, has Bates’s case introduced this species of jus post limini, or rather, annexation and tacking of successive liens of different assessments to the first judgment, upon the official bond of sheriffs? Such assessments, made under the rule of Bates's case, are for different causes, and ought to stand as they did before this mere formula of suing was judicially altered. One judgment or assessment may be for not paying over money; a second for distraining goods illegally, and a tripple penalty allowed, as in DeLeissline's and Blake's case; a third for an assault and battery by a deputy, and so on. The first judgment may be rendered the first year the sheriff was in office ; on the second, the third, and the fourth years, the sheriff may make successive defalcations ; shall the assessments of these defalcations have their liens all carried back to a time anterior, and even before such subsequent defalcations accrued, simply because there had before been a judgment upon the sheriff’s bond for some other defalcation? Can the first judgment make the sheriff’s bond like a recognizance, or the acknowledgement of a penalty on record, to hold a lien for every subsequent and possible future defalcation ?
Are the sureties, too, of the sheriff, and their respective creditors, to be placed in this unknown and contingent point, and to have their judgments against such sureties all superseded, by such a reference of subsequent assessments back to the first judgment; and when, too, this first judgment, as in the very case before us, had been already paid and satisfied, before the second assessment of Youmans ?
If the law be so, then, if there be a judgment on the official bond against the sheriff and his sureties for $100, although that $100 be actually paid, you cannot trust such sheriff or his sureties, even though your lien be secured by a confession of judgment.; you cannot trust, lest second and subsequent defalcations of the sheriff should rise up and augment such $100 judgment, by successive assessments, to the full penalty of $20,000, to overreach your prior judgment.
The law cannot tolerate such unknown perils, and underwrite them by transferring them back to the more formal lien of the first, judgment, which has been kept open merely by the rule in Bates’s case. It is entirely unlike the judgment on the penalty of a bond to pay by instalments.
In such a case, the instalments are on the face of the bond. *362 and the judgment covers only the legible instalments, which are set forth in terms and inseparable from the penalty, which covers all the instalments, in virtue of the express contract to pay by such instalments.
If- Bates's case is thus to overthrow liens, or to introduce such new rules for their order, the sooner we arrest its consequences the better. But Bates's case, duly expounded, is, in itself, a harmless adjudication.
It legislates no such revolution in the established doctrine of liens.
It merely introduces a brief formula for cases after the first judgment, to call the sherifi and his sureties to account quickly and with less expense of costs to them — nothing more was intended. Any thing further would be legislation, and destroy vested rights. For example, Norton’s lien on Edward Mulligan’s estate would be lifted “ ex post facto” i. e. by the subsequent assessment and judgment in favor of Youmans, the very cause of which may not have existed. I would here ask, too, if A recovers against the sheriff and his sureties and has been paid, and the defendants all become insolvent, shall A be liable to be called on to divide with all the subsequent judgment creditors who obtain assessments under A’s judgment, for the whole penalty of the sheriff’s bond? This would be a regular consequence of the new order of liens ; for it clearly pre-supposes that all the assessments are on one footing, i. e. to come in equally under the first judgment, like one penalty to pay instalments to many persons. But can the court make such a contract for unknown parties? Who can, even now, tell what assessments are yet to be made under the first judgment of Youmans, of April,’45? There may be twenty assessments to be yet made. Are such future assessments to come in, to overreach all past judgments against Mulligan or his sureties? Is it not plain, therefore, that every assessment must stand on its own bottom, and have its lien according to the rendition of the assessment itself? Any other rule would not merely introduce a formula, but new law, for such cases ; violating the order of liens, as it stood before Bates's case, i. e. judgments bound the defendant’s property according to the dates of their rendition, respectively. If, therefore, the established rule of liens is still the law, Norton’s judgment must take the money, and the Circuit Court decision was right.